PETROPLUS, JUDGE:
This claim was instituted by Collins Rivers and Ruth Rivers, his wife, against the Department of Highways to recover damages in the amount of $4873.68 sustained by the claimants as the result of the alleged negligent conduct of the Respondent in installing a septic tank on their property which later developments disclosed to be a health hazard and public nuisance because of the failure of the Respondent to make a proper evaluation of soil conditions and site location as well as other factors required for the adequate sewage disposal on their property.
The property in question was purchased by the claimants for the sum of $3500.00 to replace their dwelling house in Osage, West Virginia, which had been taken by the State for the sum of $2300.00 in connection with the acquisition of land for the construction of Interstate 79, a Federal-aid highway project which entitled claimants to relocation payments and benefits through the facilities of the State Department of Highways. Needy persons displaced by the Federal road building program were entitled to *46 relocation assistance and replacement housing which was “decent, safe, and sanitary”, and funds were furnished by the Federal government as supplementary payments to displaced persons to enable them to secure a comparable dwelling when the funds realized from the sale of their property to the State for road purposes were insufficient to replace their homes with dwellings that met the minimum criteria of safe, decent and sanitary housing. Adequate sewage disposal was an essential requirement to establish eligibility for the housing-allowance. Procedures were outlined in complex and voluminous regulations issued by the Federal Highway Administration, Bureau of Public Roads, Instructional Memorandum 80-1-68, and a Brochure issued by the State pursuant thereto and distributed to persons displaced by highway programs, all of which were incomprehensible to claimants, whose educational background was limited to the second and third grades of public school respectively. The Respondent undertook to process the application for benefits on behalf of the claimants and establish their eligibility for the supplementary payments from the Federal agency and make the necessary improvements to the purchased dwelling to meet the requirements of decent housing. The State was undoubtedly a volunteer, but once it assumed the responsibility, it had a duty to exercise its conduct in a prudent manner, and not cause the claimants any unnecessary loss or dissipation of their funds.
The Relocation Agent of the West Virginia Department of Highways in Clarksburg delivered a brochure to the claimants summarizing and explaining the relocation program and its benefits. Mr. Rivers, 76 years of age and in bad health, was unable to appear at the hearing. His wife, who did appear, testified that all decisions were made by the Respondent’s employees, who investigated the house chosen for their new home, and undertook to order the repairs in order to make it decent, safe, and sanitary. The standards set forth in the regulations required the structure to be in conformity with building, plumbing, electrical and housing codes, with a bathroom and flush water closet properly connected to adequate sewage disposal facilities. The claimants purchased the home in July, 1969, and it was decidely substandard with no toilet or sewage disposal system. On December 3, 1969, they paid for the home purchased and received their deed, and on the 9th day of December, 1969, the Relocation Advisory Assistant of the State certified that after an inspection of the property, it met all the requirements of decent, *47 safe, and sanitary housing as defined in the regulations, when in fact it did not. The certification, however, made the claimants eligible for a replacement subsidy of $4200.00, which it was contemplated by the Respondent would be used in whole or in part to improve the property with siding, a kitchen sink, bathroom, and the installation of a septic tank for sewage disposal. The claimants expended from their subsidy funds $995.50 for plumbing, and $418.80 for the installation of the septic tank, and other smaller amounts for improvements.
Mr. Lee Beckman, general manager of the Company which installed the septic tank, testified that he ordered the installation of the tank at the direction of the Respondent without making percolation tests, a soil analysis, or even an inspection of the proposed location, assuming that the Department of Highways had done so before placing the order, as it had done in other instances similar to this one. Shortly thereafter according to developments water and solid wastes seeped up through the soil overrunning both the claimants’ property and that of a neighbor next door. The tank had been installed in clay soil where it could not function properly and the site chosen for it was too narrow for sanitary drainage, as well as too low with reference to the remainder of the property.
Complaints to the Department of Health resulted in investigations, and an order that its use be immediately stopped. It was declared to be a health hazard and the claimants were threatened with prosecution by the Prosecuting Attorney’s office of the County. Corrective measures were discussed but were found not to be feasible. There appeared to be no solution to the problem except to install another tank of different design on another location at more expense to the claimants. When the house became untenantable the Respondent disclaimed all responsibility for the ecological disaster and the claimants find themselves to be owners of a piece of property they cannot use.
The Respondent’s defense is that the installation of a septic tank was the responsibility of the claimants, that the State only furnishes advice and assistance in these matters, and that the claimants should have made a soil evaluation and supervised the installation of the tank. This defense is not tenable, and is not supported by the evidence, but on the contrary, the evidence adduced clearly *48 and persuasively established that the Respondent undertook to provide a sewage disposal system without the intervention of the claimants.
The document produced in evidence dated December 11, 1969, signed by the claimants, wherein it is stated that they “believed and were satisfied that their property met the sanitary requirements” cannot be helpful to the State because the inadequacy of the tank was not apparent on that date. Respondent further contends that the claimants’ remedy, if any, is against the party doing the work, and that claimants have been adequately compensated by the subsidy allowance of $4200.00 over and above from what they received from the sale of their old home to the State.
The Court, however, is of the opinion that in equity and good conscience some award should be made to the claimants to compensate them for their loss and inability to use their property. As displaced persons they now find themselves without a home that they can enjoy and which qualifies for the allowance given them to provide a decent dwelling to replace the one taken under threat of eminent domain proceedings. The claimants should be reimbused for their expenditure of $1373.00 for plumbing and the tank, which are now useless, and be given additional damages in the amount of $1873.00 to rehabilitate their new home and provide it with adequate sewage facilities.
Claim allowed in the amount of $3246.00.